Filed 3/24/26  P. v. Pswatai CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DUDZAI PROSPER PSWATAI,<br><br>　　Defendant and Appellant. | D086043<br><br>(Super. Ct. No. FBA800772) |

APPEAL from an order of the Superior Court of San Bernardino County, John Peter Vander Feer, Judge.  Affirmed.

Dudzai Prosper Pswatai, in pro. per., and James Martin Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Defendant Dudzai Prosper Pswatai appeals from an order after an evidentiary hearing denying his petition for resentencing relief under Penal Code section 1172.6.[1]  His appointed counsel filed an opening brief raising no arguable issues and requesting we exercise our discretion to review the

---

[1]　Further undesignated statutory references are to the Penal Code.

record for potential issues under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). Pswatai filed a supplemental brief on his own behalf.[2]

We have independently reviewed the record and find no arguable issues. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Pswatai was convicted of first degree murder (§ 187, subd. (a)), kidnapping (§ 207, subd. (a)), and second degree robbery (§ 211) of Robert Mastrangelo. Mastrangelo's body was discovered in a roadside ditch in Barstow, California on June 14, 2008. Mastrangelo was wearing only his underwear, and his ankles were bound with a piece of black cloth. He had been shot six times in the head, neck, and torso. The pathologist who testified at Pswatai's trial opined that Mastrangelo died between June 11 to June 13. The cause of death was multiple gunshot wounds.

A friend of Mastrangelo's testified that on June 10, 2008, several days before Mastrangelo's body was discovered, Mastrangelo asked him to meet with Jeffrey "Slutter" Berrouet to buy ecstasy for Mastrangelo. After making the purchase, the friend discovered the ecstasy pills were fake. The friend told Mastrangelo that Mastrangelo "got burned" by Berrouet. Berrouet later returned the money from the sale of the fake ecstasy pills.

---

[2] We construe Pswatai's statement in the supplemental brief that "the Appellate Court already has [his evidence]" as a request to take judicial notice of the appellate record from the direct appeal (case No. D056851). So construed, the request for judicial notice is granted.

Celina Sanchez, who was Pswatai and Berrouet's roommate, also testified at Pswatai's trial. Sanchez pled guilty to kidnapping Mastrangelo. She knew Pswatai by the name "Baby Ike." She testified that on June 10, 2008, Pswatai and Berrouet came home appearing angry. She overhead them discussing "something that went wrong that night." She then overheard Pswatai say, "We should kidnap a white boy like they do in Alpha Dog." She explained that "Alpha Dog" is a movie involving a "white boy" who is kidnapped and then killed over drug money.

Sanchez testified that the following day, Berrouet and Pswatai arrived at the house asking for bleach and trash bags. Pswatai also asked for a yellow rope they previously used to fix Berrouet's bumper. When Sanchez responded that she did not know where the rope was, Pswatai grabbed a black bathrobe belt that was sitting on a couch, and left. In court, Sanchez was shown a photo of a piece of cloth, Exhibit 101, which she claimed was the robe belt Pswatai took from her but that in the photo it appeared dirty and ripped. Later at trial, the crime scene investigator identified Exhibit 101 as a photo of the piece of cloth used to bind Mastrangelo's legs.

Sanchez claimed she saw Berrouet and Pswatai going in and out of the garage throughout the evening of June 11, 2008. At one point, Berrouet and Pswatai changed their clothes and discarded their original clothing in a box in the garage. Sanchez also saw Pswatai at some point during the night counting "a stack" of money.

On June 12, 2008, Berrouett asked to borrow Sanchez's car. When the car was returned later that day, she noticed it was "really clean," and the

3

floor mats and car seats had been removed.[3] She also saw a cellophane bag with six fired bullet casings sitting on top of the television inside the shared house. She claimed the garage smelled like bleach and items that were stored in the garage had been discarded in a nearby dumpster. She also claimed that when Pswatai arrived at the house later that afternoon, he had a new haircut, new jewelry, and a new cell phone.

Later that month, Berrouet and Pswatai moved out of Sanchez's home and began living with Berrouet's acquaintance, Arlene Pitchford. Pitchford testified that she overheard a conversation between Pswatai and Berrouet, in which Pswatai was crying. Pswatai said he was "sorry," and "he didn't mean to do what he did." Pswatai stated he did not mean to shoot anyone, "he was just going to rob him[ ]," and he "lost control." Pswatai also said it was a "drug deal gone bad." Pswatai then admitted to tying up the victim in "Sanchy's garage" and shooting the victim. Pitchford further testified that Pswatai and Berrouet asked for her help in reupholstering Sanchez's car.

The investigating officer, Detective Keith Libby, testified that when Pswatai was arrested, Pswatai knew the type of bullets used to shoot Mastrangelo even before ballistics testing had been done. Pswatai also admitted giving Berrouet the bullets. Pswatai claimed he went into Sanchez's garage and saw Mastrangelo with Berrouet and three other men. According to Pswatai, "[Berrouet] wanted [Pswatai] to be a part of it[.]" Pswatai denied shooting Mastrangelo, but admitted giving Berrouet rope and holding Mastrangelo's legs while someone else tied him up. Pswatai also

---

[3]     Sanchez would later see the seats in the garage of the house she shared with Berrouet and Pswatai.

4

wrote a note to Mastrangelo's family apologizing for his "small role" in the murder.

Detective Libby testified about another conversation between Berrouet and Pswatai that was recorded from the jail where they were detained after their arrests. The recording was not played for the jury because background noise and other factors made it difficult to understand on the courtroom speaker system. According to Detective Libby, Pswatai said on the recording, "I need that gun. It's in Canada." Detective Libby also claimed Pswatai called Berrouet a "rat" during the conversation.

When Pswatai testified, he claimed he never discussed a gun or called anyone a "rat" in the recorded jail conversation. He also claimed he lied during his entire postarrest interview with Detective Libby because he did not want to "snitch." He claimed he was not in the garage when the victim was shot.

At trial, the trial court instructed the jury that they could find Pswatai guilty of murder under multiple theories of murder liability: (1) as a direct perpetrator of deliberate and premeditated murder; (2) as a direct aider and abettor of deliberate and premeditated murder; (3) of kidnapping and/or robbery felony murder; (4) as an aider and abettor of kidnapping and/or robbery felony murder; (5) as a member of an uncharged conspiracy (with Berrouet and/or Sanchez) to commit murder; and (6) as a member of an uncharged conspiracy (with Berrouet and/or Sanchez) to commit a kidnapping and/or a robbery, the natural and probable consequence of which was murder.

After deliberations, the jury found Pswatai guilty of the first degree murder, kidnapping, and second degree robbery, but not guilty of solicitation of murder. For each conviction, the jury also returned true findings on

5

allegations that Pswatai personally used a firearm (§ 12022.53, subd. (b)), he personally and intentionally discharged a firearm (*Id.*, subd. (c)), and he personally and intentionally discharged a firearm, which proximately caused great bodily injury and death to Mastrangelo (*Id.*, subd. (d)).

The trial court sentenced Pswatai to 109 years to life in prison. This court affirmed the judgment in the direct appeal. (*People. v. Pswatai* (Jan. 5, 2021, D056851 [nonpub. opn.].)

Following the effective date of Senate Bill No. 1437, Pswatai filed a petition for resentencing under section 1172.6. After the trial court summarily denied the petition, this court reversed and remanded for further proceedings required by section 1172.6. (*People v. Pswatai* (May 8, 2023, D080367) [nonpub. opn.].)

On remand, the trial court issued an order to show cause and set the matter for an evidentiary hearing under section 1172.6. In response to the order to show cause, the People argued Pswatai was guilty under a still-valid theory of murder, because the evidence presented at trial showed beyond a reasonable doubt that Pswatai was the "ringleader/mastermind" of the plan to kidnap, rob, and kill the victim. Thus, Pswatai could be found liable for murder either as the actual killer, a major participant, or because he acted with reckless indifference to human life.

Pswatai, who elected to represent himself in the section 1172.6 evidentiary proceedings, claimed he was not involved in the alleged crimes and was not the actual shooter. In support, Pswatai submitted the recording of his jail conversation with Berrouet and a new transcript of the recording. He believed the actual recording showed that Detective Libby mischaracterized the conversation and presented false testimony to the jury.

In their opposition, the People maintained Pswatai was guilty of murder either as the actual killer, a major participant, or because he acted with reckless indifference to human life.

After holding an evidentiary hearing on January 3, 2025, the trial court denied the resentencing petition on March 28, 2025. The court stated that it reviewed over 3,000 pages of transcripts from Pswatai's trial, in addition to the other exhibits offered by Pswatai. The court also considered testimony from Pswatai's preliminary hearing but only to the extent such testimony was not admitted as hearsay. Based on the evidence, the court found beyond a reasonable doubt that Pswatai was guilty of first degree murder as the actual killer who shot the victim. Alternatively, the court found the evidence was sufficient to find Pswatai liable for murder as a major participant. Lastly, the court found that Pswatai acted with reckless indifference to human life, because Pswatai was aware that a gun would be used; Pswatai used a gun himself; the incident did not involve a sudden explosion of violence; Pswatai was aware Berrouet was likely to kill Mastrangelo; and Pswatai did nothing to minimize the possibility of violence despite having the opportunity to stop the killing.

DISCUSSION

Appointed appellate counsel filed a brief raising no arguable issues and requesting that we exercise our discretion to review the record under *Delgadillo*, *Wende*, and *Anders*. The brief identifies the following potential issue to assist this court in conducting its independent review of the record: Whether the court erred in denying Pswatai's section 1172.6 resentencing petition?

In his supplemental brief, Pswatai challenges the sufficiency of the evidence to support the denial of his request for relief under section 1172.6.

7

He contends there is no credible evidence that he was the shooter. He argues that Detective Libby provided false testimony to the jury about the recorded jailhouse conversation between him and Berrouet. He claims that other witnesses at trial provided contradictory testimony and were otherwise not credible. He also notes the lack of physical evidence connecting him to the shooting, specifically that there was no DNA evidence connecting him to the robe belt found binding the victim's legs.

We have considered each of Pswatai's contentions and conclude there are no potentially meritorious issues in this appeal. This court reviews the trial court's findings after a section 1172.6 evidentiary hearing for substantial evidence. (*People v. Underwood* (2024) 99 Cal.App.5th 303, 314.) "We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' " (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) We must " ' "presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citations.] Substantial evidence also ' "includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "Our job is only to see if substantial evidence exists to support the [trial court's ruling] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

We conclude the trial court's order denying Pswatai's petition after the evidentiary hearing is supported by substantial evidence. The evidence

presented at Pswatai's trial included witness testimony from Sanchez, who claimed she overheard Pswatai say that he and Berrouet "should kidnap a white boy like they do in Alpha Dog." The next day, Pswatai asked Sanchez for a rope and took a belt that belonged to her robe. Later that night, Sanchez saw Pswatai and Berrouet go in and out of the garage for several hours, they asked her for bleach and trash bags, and they changed their clothes at one point during the night. Another witness, Pitchford, testified that she overheard defendant admit to the shooting and that it was a "drug deal gone bad." Additionally, in a postarrest interview, despite claiming he never shot the victim, Pswatai admitted helping tie the victim's legs when the victim was in the garage. Pswatai also knew the type of bullets used to kill the victim even before a ballistics test had been done. At trial, the robe belt Pswatai took from Sanchez was identified as the piece of cloth found binding the victim's legs when the victim's body was discovered. Thus, there is substantial evidence to support the trial court's finding that Pswatai was the actual killer, even if other evidence in the record supports Pswatai's version of events.

In his supplemental brief, Pswatai also challenges whether the factors identified by the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) were supported by substantial evidence. However, those factors are only relevant to determine whether a defendant convicted of felony murder, who was not the actual killer, was a major participant in the underlying felony or acted with reckless indifference to human life. As discussed above, substantial evidence supports the trial court's finding that Pswatai was the actual killer. Accordingly, we do not need to consider whether the *Banks* and *Clark* factors were established.

Separate from his contentions related to section 1172.6, Pswatai also contends that the trial court "denied" him the opportunity to raise a Racial Justice Act (RJA) claim during his section 1172.6 proceedings. Pswatai's contentions related to the RJA, however, are contradicted by the record. After Pswatai informed the court that he intended to bring an RJA claim, the court indicated that an RJA petition relied on a "separate code section[ ]" and was "completely separate from the 1172.6." The court stated that although it was not going to address his RJA claims during section 1172.6 proceedings, the court was "not barring [Pswatai] from it, from filing it[.]" Pswatai then stated he had filed a petition for writ of habeas corpus under the RJA, which the court confirmed would be "handled separately" from his section 1172.6 resentencing claims. The record therefore reveals that the court did not prevent Pswatai from raising his RJA claims, only that any RJA claims would be considered separately from Pswatai's section 1172.6 claims.

In sum, substantial evidence supports the trial court's conclusion beyond a reasonable doubt that Pswatai was guilty of murder under current law and was thus ineligible for relief under section 1172.6. We have exercised our discretion to independently review the record for error

consistent with the process mandated by *Wende* and *Anders*.[4]  We have not discovered any arguable issues for reversal.  Competent counsel has represented Pswatai on this appeal.

DISPOSITION

The order denying Pswatai's section 1172.6 resentencing petition is affirmed.

RUBIN, J.

WE CONCUR:


BUCHANAN, Acting P. J.


HUFFMAN, J.*

---

4     In *Delgadillo, supra*, 14 Cal.5th 216, the California Supreme Court held that *Wende* and *Anders* procedures do not apply in appeals from the denial of a section 1172.6 postjudgment petition. (*Delgadillo,* at pp. 224–226.) The Supreme Court explained that where, as here, a defendant has filed a supplemental brief, "the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion," but the filing of a supplemental brief alone does not compel the court to independently review the entire record to identify unraised issues, although it may exercise its discretion to do so.  (*Id.* at p. 232.)  In this appeal, we have exercised our discretion to independently review the entire record to identify any arguable issues.

*     Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.